## CHARLES Y. BEACH'S APPEAL FROM PROBATE.

Third Judicial District, New Haven, June Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Upon application to a Court of Probate for the appointment of an administrator on the estate of a nonresident, the existence of property within the probate district, belonging to the deceased at the time of his death, is essential to the jurisdiction of the court, and must be established to its satisfaction before it can make the appointment.

While questions of contested title cannot be finally settled by the Court of Probate, they must nevertheless be determined so far as may be necessary to justify the court in exercising its jurisdiction. For this purpose it may be sufficient to find an apparent ownership, in the case of tangible property, or an apparent liability to the intestate from some person, if the alleged property be a chose in action.

The mere claim of the applicant for administration, wholly unsupported by any evidential fact, that certain land in this State standing in the name of the decedent's son was purchased with his father's money or with money of his estate, and is recoverable from said son by the estate, is not evidence of the existence of property within the State sufficient to justify the court in appointing an administrator, though the object of the application is to enable such administrator to bring suit for the recovery of the land, or its value, from the son.

Argued June 9th—decided July 24th, 1903.

APPEAL from a decree of the Court of Probate for the district of New Haven appointing an administrator, taken to and reserved by the Superior Court in New Haven County, *Elmer, J.*, upon an agreed statement of facts, for the advice of this court. *Judgment advised for appellant.*

The material facts agreed to and found by the trial court are in substance these : 1. Upon the death on January 10th, 1893, of Calvin B. Camp, father of Mary E. Camp, the applicant for administration in these proceedings, said Mary E. Camp became entitled to some $7,000 by reason of the failure of her father to account, as guardian, for money which came into his possession in 1868, he owning a life estate in the same and she owning the fee or *corpus ;* her brother and sister each become entitled to about the same sum on the same grounds. Camp died utterly insolvent, having misappropriated and lost his children's money. In 1868 Calvin B. Camp was appointed guardian of each of these three children, by the proper court in New York, and gave a guardian's bond to each child in the sum of $10,000, for the faithful performance of his duty, with Moses S. Beach and one Merritt as sureties. The youngest of Camp's children became of age in 1876. 2. Between 1888 and 1891 the three children were engaged in litigation against their father, seeking, by means of an accounting in a probate court in New York, to secure possession of the money which came into his possession in 1868; which litigation failed because they were not entitled to possession of the *corpus*, or any part thereof, until their father's death. Moses S. Beach knew of this litigation. 3. Moses S. Beach died July 25th, 1892, domiciled in New York, leaving a widow and five children. He left personal property amounting to about $7,500, and real estate in Arkansas valued at about $200,000. By reason of his being surety on the guardian bonds of 1868, his estate was liable to Camp's three children for the amounts due them upon their father's death. (This liability is assumed for the purposes of this case.) 4. Moses S. Beach's estate was fully administered and settled in the New York court having jurisdiction thereof, the final account of the administrator being accepted and approved May 13th, 1895. On April 28th, 1893, and after the death of Camp, legal notice was given to the creditors of Beach's estate to present their claims. Camp's three children knew of Beach's death soon after it occurred, were then resident and domiciled in New York, and presented no claim against his estate. 5. Upon Camp's death in

1893, an accounting between his executor and his three children was commenced in the surrogate's court in New York, and decrees fixing the amount due each child were entered December 19th, 1896, and these decrees were affirmed, upon appeal, February 15th, 1901. Beach's administrator had knowledge of this litigation and of the claim against the bondsmen. 6. Said Moses S. Beach had at all times, in his own name, and owned and controlled by him, and left at his decease, property of a value more than equal to all his outstanding indebtedness and the amount of the claims based by the said three children of said Calvin B. Camp upon said bonds. 7. Subsequent to February 15th, 1901, Camp's children inquired of two daughters of Beach concerning the location of any property belonging to Beach at his death, without success. Said children did not have actual knowledge of the location of the Arkansas real estate until apprised thereof in these proceedings. 8. In the years 1891 and 1892 the said Charles Y. Beach purchased large amounts of real estate both in New Haven and Bridgeport, prior to which said dates he had owned no real estate in either of said cities. 9. At no time has there been any tangible real or personal estate standing in the name of Moses S. Beach and situated in the probate district of New Haven or the State of Connecticut. 10. On May 9th, 1902, Mary E. Camp applied for administration as a creditor of said deceased, and on July 3d, 1902, said Court of Probate of New Haven passed an order appointing an administrator, from which this appeal was taken by said Charles Y. Beach, now a resident of Massachusetts. 11. Moses S. Beach at his decease left no property of any kind in this State, unless the claims advanced by the appellee upon the above facts, as hereinafter set forth, constitute such property. 12. Upon the above facts the appellee claims as follows, to wit: (*a*) that said real estate mentioned in paragraph 8 was purchased by the appellant with money belonging either to said Moses S. Beach in his lifetime, or to his estate; (*b*) that said real estate belongs now to the estate of said Moses S. Beach, at least to the extent necessary to pay the judgment of said Mary E. Camp against the estate

of Calvin B. Camp and any other claims that may be duly presented against the estate of Moses S. Beach, and that therefore said claims and choses in action constitute property sufficient to give the Court of Probate jurisdiction under the statute (§ 318); the sole purpose of the appointment of the administrator being to bring suit against Charles Y. Beach for a conveyance of said real estate to said administrator, or for its value in money, for the purpose of answering to said claims. The appellant contends that upon the above facts neither the Court of Probate for New Haven nor the Superior Court has jurisdiction to appoint an administrator.

*A. Heaton Robertson* and *James E. Wheeler*, for the applicant for administration.

*Goodwin Stoddard* and *Arthur M. Marsh*, for Charles Y. Beach.

HAMERSLEY, J. This is an application to the Court of Probate for the appointment of an administrator on the intestate estate of Moses S. Beach, made by Mary E. Camp who claims to be a creditor. Upon her application the Court of Probate passed an order appointing James E. Wheeler administrator. Charles Y. Beach being a son of Moses S. Beach appealed from this order to the Superior Court.

The reasons of appeal are set forth in the appeal itself as follows: Moses S. Beach died on July 25th, 1892, resident and domiciled in the State of New York. He left no property in the probate district of New Haven or in the State of Connecticut, and his estate was long since fully administered and settled in the courts of New York having jurisdiction thereof.

Upon this appeal the Superior Court had full jurisdiction of the subject-matter, namely, the appointment of an administrator upon the estate of Moses S. Beach; and within the issues presented by the appeal the court tries the cause *de novo.*

The issues in this case are these: Was Moses S. Beach at

the time of his death an inhabitant of this State? Did he leave property in this State? The appeal alleges that he was not an inhabitant and did not leave property in this State. These allegations by our practice are taken as denied, in the absence of any further pleading. If the court finds that the intestate did not live in this State and did not leave property here, the appellant is entitled to judgment and the probate order must be set aside.

There appears to have been no actual trial, but the parties agreed upon a statement of facts, and these facts are found by the court and the case reserved for the advice of this court as to the judgment to be rendered on the facts thus found.

It is clear that the facts found by the court do not prove that Moses S. Beach at the time of his death left any property in this State. The purchase by his son of land in Bridgeport and New Haven during the year preceding his death and the year of his death, furnishes no presumption that the father had any interest in the land so purchased; and the other facts found by the court, in connection with this fact, raise no such presumption. Moreover, the court expressly finds that at his death Moses S. Beach had no tangible property, real or personal, in this State, and had no property whatever in this State, unless the advancement of the claims of the appellee, upon the facts found, constitute property within the meaning of the statute. This question is the only material question of law arising in the cause as presented by the reservation, and its decision must determine the judgment the Superior Court shall render.

The administration of estates of deceased persons is within the general jurisdiction of the Superior Court, unless exclusive jurisdiction is committed to some other court. *Mack's Appeal*, 71 Conn. 122, 132. By statute that jurisdiction is committed, and its exercise in the first instance confined, to the Court of Probate, which is an inferior court of limited jurisdiction. The death of the person whose estate is sought to be administered is a jurisdictional fact. Unless this fact exists there is no jurisdiction of the subject-matter. The

existence of property within the probate district, belonging to the deceased at the time of death, is a fact necessary to the appointment of an administrator upon the estate of a nonresident, by that Court of Probate, and is in a sense a jurisdictional fact. Whether it is a jurisdictional fact in the same sense as the fact of death, and the nature of the difference, if any, are questions which need not be considered in this case. It is enough for present purposes that the existence of property within the limits of the district is a fact which must be established to the satisfaction of the Court of Probate before it can properly appoint an administrator, and that upon appeal this fact may be, as it is in this case, the material fact in issue before the Superior Court.

This fact comprises two facts: the existence of property within the district, and the ownership of that property by the intestate at his death. Property, as used in the statute, includes not only land and tangible personal property, but a chose in action. A thing which is the subject of legal ownership is property, whether that thing is in possession of the owner or is in possession of another and the owner has only a bare right to reduce the thing to possession by means of an action. 2 Blackstone's Comm., 389, 397.

In the case of property in possession, its existence within the district is a fact which can ordinarily be easily and certainly ascertained; but the fact of its ownership by the intestate at his death is one which may be doubtful and difficult to settle. If land stood in the name of the intestate, or tangible personal property was in his actual possession at the time of his death, these insignia of ownership would ordinarily justify the Court of Probate in finding the fact, and it might not in such case be necessary or proper to determine a question of contested title. It has no power to try such a question except as it is necessarily incident to its appointment of an administrator, and then its determination is not binding beyond the necessities of the purpose for which it is made. It is therefore sufficient that the intestate was the apparent owner of the property.

In the case of property in action the same two facts must be proved; but here the two facts are more closely related and are ordinarily proved by the same evidence. A promissory note is evidence that the payor has promised to deliver his money to the possession of the payee on the maturity of the note, and is also evidence that the payee is the owner of the property or chose in action thus proved to exist. And in general, proof of the existence of a chose in action also proves its ownership; and so, in proving the existence and the ownership of property in action, the same rule of evidence applies.as in proving the ownership of property in possession. Questions of contested title cannot be finally settled by the Court of Probate, but may be considered and must be determined so far as is necessary to enable the court to exercise its jurisdiction in the appointment of an administrator. For that purpose it must find that property, either in possession or in action, owned by the nonresident intestate, existed within the district at his death. For that purpose it may be sufficient to find, in the case of tangible property, an apparent ownership in the intestate, or in the case of property in action, an apparent liability to the intestate from some person under such circumstances that the situs of the property or chose in action is within the district. The law, as thus stated, has been firmly established by our decisions. *Hartford & N. H. R. Co.* v. *Andrews*, 36 Conn. 213; *Chamberlin's Appeal*, 70 id. 363; *Mack's Appeal*, 71 id. 122. How far a Court of Probate may properly consider the merits of a contested title, in determining the fact of an apparent ownership, is a matter immaterial to the present decision. In every case that fact must be passed upon, and if the Court of Probate, or Superior Court upon appeal, violates the principles of law in finding, or refusing to find, that fact, an error is committed.

It follows conclusively from this state of the law that the claims advanced by the appellee, upon the facts found by the Superior Court, do not constitute property. The distinction between an apparent liability from Charles Y. Beach to his father at the time of his father's death, and a mere claim, advanced ten years afterwards by an applicant for adminis-

tration, that there was such a liability, is obvious. The former is property within the meaning of the statute; the latter may or may not be evidence tending to prove, but certainly does not constitute, property within any meaning that word can be used to express. "Claim" in its primary meaning is used to indicate the assertion of an existing right. In its secondary meaning it may be used to indicate the right itself. In our decisions on this subject, "claim" may have been used in its secondary meaning to indicate a chose in action, but such use of the word cannot justify the inference that because the right is property, a mere pretension to the right is property; nor can it justify an interpolation of language not used in the statute, so that it shall read: "when a person living out of the State shall die intestate, leaving property within the State (or when any person shall claim that a nonresident intestate left property within the State), administration may be granted," etc. General Statutes, § 318.

It may be that the appellee intended to insist that the claim or assertion, by an applicant for administration, that the intestate owned property within the district, is conclusive evidence of that fact. Allusion was made in argument to the practice of granting administration upon the mere assertion of the applicant. Undoubtedly our probate courts, in matters which are not contested, do find facts upon evidence which would have slight weight in case of a contest; but upon a trial of the issue—did the intestate own property within the district at his death?—neither the Court of Probate nor the Superior Court can lawfully give controlling or even any weight to the mere assertions of the applicant, of facts outside his knowledge and inconsistent with the facts found by the court.

We deem it clear that the claims advanced by the appellee, upon the facts found by the court, do not constitute property within the meaning of the statute, and that the conclusion of the court that the intestate left no property in the district, if said claims advanced by appellee do not constitute property, is a proper and lawful conclusion, from all the facts found.

The Superior Court is advised to render judgment for the appellant, setting aside the order of the Court or Probate. In this opinion the other judges concurred.